UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT HOFFMAN, # 181813,          )
                                   )
                    Plaintiff,     )
                                   )        Case No. 1:17-cv-316
v.                                 )
                                   )        Honorable Gordon J. Quist
DENNIS BEHLER, et al.,             )
                                   )
                    Defendants.    )
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.   The defendants are Physician's Assistant Dennis Behler, Physician's Assistant George Johnson, and Registered Nurse Ann Karp.   Plaintiff claims that defendants violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause.   He also asks the Court to exercise supplemental jurisdiction on gross negligence claims against the defendants.   Plaintiff seeks an award of damages.

The matter is before the Court on defendants' motions for summary judgment on all plaintiff's federal claims.   (ECF No. 45, 53).   Plaintiff opposes defendants' motions.   (ECF No. 58, 60).   For the reasons stated herein, I recommend that defendants' motions be granted and that judgment be entered in their favor on all plaintiff's federal claims.   I recommend that the Court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's state law claims.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).   The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Rocheleau v. Elder Living Const.*, LLC, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.   *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.   *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).    To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.   *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x 996, 1001 (6th Cir. 2017).    The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).    "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].' "   *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

## **Qualified Immunity**

Registered Nurse Ann Karp argues that she is entitled to summary judgment on the basis of qualified immunity.    (ECF No. 46, PageID.193-95).    "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' "   *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Hermansen v. Thompson*, 678 F. App'x 321, 325 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.'" *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Gardner v. Evans*, 811 F.3d 844, 846 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose

-4-

of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .   Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.   If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in h[er] shoes would have understood that [s]he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' "   *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted

-5-

reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see Kisela v Hughes*, 138 S. Ct. 1148, 1152 (2018).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, Nos. 17-3384/3475, __ F. App'x __, 2018 WL 3359554, at *3 (6th Cir. July 10, 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."). The burden applies to each claim. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## Preliminary Matters

Plaintiff's complaint is not properly verified, as he has interjected the limitations that the allegations are made on information and belief. (*See* ECF No. 1 at PageID.9). "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) (citation and quotation omitted). Accordingly, plaintiff's complaint will not be considered as his affidavit in opposition to defendant's motion. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

"Verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred*

*Med. Sys.*, LLC, 357 F. App'x 656, 662 (6th Cir. 2009); *Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at *1 (W.D. Mich. Mar. 30, 2017).    "Arguments in parties' briefs are not evidence."    *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

## **Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate in the custody of the Michigan Department of Corrections.    He has Dupuytren's disease, "a progressive fibroproliferative disorder of unknown origin affecting the hands causing permanent flexion contracture of the digits."  (ECF No. 53-5, PageID.630; *see also* ECF No. 60-1, PageID.736, 767).    There is no cure.    Treatment is by surgery and there is a high rate of recurrence.    (ECF No. 53-5, PageID.634).

Dennis Behler is a licensed physician's assistant (PA) and he was a medical care provider at the Bellamy Creek Correctional Facility during the period at issue. (Behler Aff. ¶¶ 1-2, ECF No. 53-3, PageID.620).    On January 17, 2014, PA Behler first examined plaintiff.    As of that date, plaintiff had already been approved for surgery on his left hand.    (Behler Aff. ¶ 3, ECF No. 53-3, PageID.621).

On March 11, 2014, William Huettner, M.D., performed the surgery.    This surgery included temporary placement of a digit widget that would be removed in a subsequent surgery.[1]  (ECF No. 53-2, PageID.461-63; Plf. Decl. ¶¶ 4-5, ECF No. 60-1, PageID.723; Huettner Decl. ¶ 5, ECF No. 60-1, PageID.791).    When plaintiff

---

[1] Dr. Huettner described this device as "an external, active motion, proximal interphalangeal joint extension toward device (digit wid[g]et) of the ring and small fingers."  (ECF No. 60-1, PageID.736).

returned to prison later that day, a nurse contacted the on-call medical provider and obtained a short-term order for an Ultram prescription.   On March 12, 2014, PA Behler examined plaintiff and prescribed Norco and Ibuprofen for his pain.   When plaintiff returned on March 19, 2014, he reported that his pain was better controlled through the night and that he was doing better.   (ECF No. 53-2, PageID.464-78; Behler Aff. ¶¶ 4-6, ECF No. 53-3, PageID.621; ECF No. 62, PageID.811-14).

On March 24, 2014, plaintiff returned from a follow-up appointment with Dr. Huettner with additional digit widget bands.   The next day, PA Behler entered a clinical progress note indicating that plaintiff was healing well.   (ECF No. 53-2, PageID.479-83; Behler Aff. ¶¶ 7-8, ECF No. 53-3, PageID.621; Plf. Decl. ¶¶ 10-12, ECF No. 60-1, PageID.725).

On April 2, 2014, PA Behler evaluated plaintiff for complaints of increased pain in the fingers that had received surgical treatment.   PA Behler ordered Ibuprofen and Ultram for plaintiff's pain.   (ECF No. 53-2, PageID.484-97; Behler Aff. ¶¶ 9-10, ECF No. 53-3, PageID.621; ECF No. 62, PageID.810).

On April 21, 2014, Dr. Huettner provided plaintiff with an occupational therapy prescription.   It stated:  "I certify that I have examined the patient and occupational therapy is necessary and services will be furnished while the patient is under my care, and that the plan of care is established and will be reviewed every 30 days or more often, if the patient's condition requires."   (ECF No. 53-2, PageID.460). Later that day when plaintiff returned to prison, PA Behler gave him verbal

-8-

instructions to start occupational therapy and range of motion exercises.    Plaintiff states that PA Behler did not demonstrate how to perform the exercises.    PA Behler did not believe occupational therapy was medically necessary.    In lieu of occupational therapy plaintiff was instructed to perform range of motion exercises. Plaintiff did not receive treatment by an occupational therapist.    (ECF No. 53-2, PageID.487-97; Plf. Decl. ¶¶ 14-19, ECF No. 60-1, PageID.725-26; ECF No. 60-1, PageID.759-61, 768, 777-79).

On May 20, 2014, Dr. Huettner performed another surgery to remove the digit widget from plaintiff's left hand.    He provided another occupational therapy prescription containing an identical certification.    (ECF No. 53-2, PageID.498-504; Plf. Decl. ¶¶ 2-5, ECF No. 58-1, PageID.665).    Plaintiff returned to prison later that day.    PA Behler approved an Ultram prescription and indicated that plaintiff should be added to his patient list for the following day.    Plaintiff did not appear on his May 21, 2014, patient list.    (ECF No.53-2, PageID.505-07; ECF No. 60-1, PageID.779-80; Plf. Decl. ¶ 6, ECF No. 58-1, PageID.666; ECF No. 60-1, PageID.779).

On May 22, 2014, plaintiff complained to Registered Nurse and Health Unit Manager Ann Karp[2] that the pain medications that physicians had prescribed for him (Tegretol and Motrin) were not strong enough to relieve his pain.    Nurse Karp did not prescribe medications and she did not have authority to change medications

---

[2] Ann Karp was a licensed registered nurse.    She has retired.    (Karp Aff. ¶ 2, ECF No. 50-1, PageID.427).

-9-

ordered by medical providers.   (Karp Aff. ¶¶ 4-5, ECF No. 50-1, PageID.428; ECF No. 53-3, PageID.509-20; Plf. Decl. ¶¶ 11-12, ECF No. 58-1, PageID.666-67). Plaintiff asked to see PA Behler or a doctor.   Nurse Karp did not believe that an immediate referral to a medical provider was necessary.   Plaintiff had a medical appointment scheduled for the next day.   According to plaintiff, Nurse Karp stated that it was not going to kill plaintiff to wait until the next day.   (Karp Aff. ¶¶ 4-10, ECF No. 50-1, PageID.428-29; Plf. Decl. ¶¶ 14-18, ECF No. 58-1, PageID.667, ECF No. 58-1, PageID.681-88).   Prisoners Murphy, Robinson, and Jones indicate that they observed plaintiff complaining that he was in pain and/or that he appeared to be in pain after the May 20, 2014, surgery.   (ECF No. 58-1, PageID.671-78).

On May 23, 2014, PA Behler examined plaintiff.   Plaintiff's condition had improved.   According to plaintiff, PA Behler stated that occupational therapy was not essential to plaintiff's recovery and that he could perform rehabilitation on his own.   PA Behler recommended that plaintiff continue to receive Ultram until his follow-up visit with Dr. Huettner.   PA Behler scheduled a Pain Management Committee evaluation and an orthopedic visit.    PA Behler had no further involvement in plaintiff's medical care.   (ECF No. 53-2, PageID.511-17; Behler Aff. ¶¶ 14-16, ECF No. 53-3, PageID.622; Plf. Decl. ¶¶ 20-23, ECF No. 58-1, PageID.667-68; Plf. Decl. ¶¶ 21-25, ECF No. 60-1, PageID.726-27; ECF No. 60-1, PageID.779; ECF No. 62, PageID.804-09).

-10-

PA George Johnson is a licensed medical care provider and he treated prisoners at the Bellamy Creek Correctional Facility during the period at issue.    (Johnson Aff. ¶¶ 1-2, ECF No. 53-4, PageID.624).    On June 6, 2014, PA Johnson reviewed a note from Dr. Huettner.    Dr. Huettner stated that he had provided plaintiff with a "home exercise program" and plaintiff needed "to be more aggressive" with his home exercise program and deep tissue massage.    He stated that plaintiff "would benefit from occupational therapy."    He recommended that Neurontin be considered as medication for plaintiff's digital nerve pain and recommended a follow-up visit in two months.    Dr. Huettner concluded his note with a statement that plaintiff had a "limited prognosis" because of the "severity of [the] disease."    (ECF No. 53-2, PageID.523; Johnson Aff. ¶ 3, ECF No. 53-4, PageID.625; ECF No. 60-1, PageID.784).

Years later, on April 20, 2017, Dr. Huettner signed a declaration expressing his medical opinion that occupational therapy was a significant portion of plaintiff's recovery process from the March 11, 2014, surgical procedure.    He stated that plaintiff's recovery from that surgery would have benefitted from the occupational therapy he prescribed.    (Huettner Decl. ¶¶ 7-8, ECF No. 60-1, PageID.791).    He stated that "an occupational therapist was needed to supervise and instruct [plaintiff] as opposed to self-rehabilitation, because a qualified therapist would advise on limitations and appropriately push to obtain maximum results within safe limits for the patient."    (*Id.* at ¶ 9, PageID.791).

On June 13, 2014, PA Johnson had his first direct contact with plaintiff. Plaintiff complained of hand pain.   PA Johnson instructed plaintiff to continue his self-directed physical therapy and requested approval of the non-formulary medication Neurontin (gabapentin).   Plaintiff states that he asked PA Johnson for occupational therapy and received a response indicating that his request would be considered.   PA Johnson did not request occupational therapy for plaintiff because he did not believe that it was medically necessary.   In lieu of occupational therapy, PA Johnson instructed plaintiff to perform range of motion exercises.   PA Johnson did not assess his physical rehabilitation abilities or show him any exercises.   (ECF No. 53-2, PageID.525-27; Johnson Aff. ¶¶ 3-5, ECF No. 53-4, PageID.625; Plf. Decl. ¶ 27, ECF No. 60-1, PageID.727, 769, 786).   PA Johnson's request for approval of Neurontin was deferred with a recommendation to refer plaintiff to the Pain Management Committee.   On June 17, 2014, PA Johnson learned that his medication request had been deferred and he requested a consultation with Dr. Huettner regarding a Xiaflex (collagenase) injection.   This request was approved. Plaintiff returned to PA Johnson on June 25, 2014.   PA Johnson noted no change in plaintiff's hands and requested that the Pain Management Committee consider providing Neurontin.   The Pain Management Committee deferred this request and recommended using formulary non-steroidal anti-inflammatory drugs (NSAIDs) for pain management.   (ECF No. 53-2, PageID.528-41; Johnson Aff. ¶¶ 6-9, ECF No. 53-4, PageID.625; Plf. Decl. ¶¶ 28, 30, ECF No. 60-1, PageID.727-28).

-12-

On July 22, 2014, PA Johnson requested that plaintiff be provided with a two-month follow-up examination by Dr. Huettner.  This request was approved.  On July 29, 2014, PA Johnson noted bilateral palmar thickening with slight contractures in the affected fingers and a 45-degree contracture in plaintiff's left middle finger.  PA Johnson ordered Tegretol for plaintiff's pain.  On August 7, 2014, PA Johnson discontinued Tegretol because plaintiff reported that it was not helping with his pain.  Plaintiff related that earlier that day he had discussed with Dr. Huettner possible amputation of his left ring finger for pain relief.   PA Johnson submitted the request for amputation and submitted another request for a Xiaflex injection in plaintiff's right hand.  (ECF No. 53-2, PageID.542-69; Johnson Aff. ¶¶ 10-11, ECF No. 53-4, PageID.626;  Plf. Decl.  ¶¶  30-37,  ECF  No.  60-1,  PageID.728-29;  ECF  No.  62, PageID.801-03).

On October 7, 2014, plaintiff returned to PA Johnson and reported increased pain in the middle finger of his left hand.   Plaintiff related that Blue Cross Blue Shield had been denying Xiaflex injections.   PA Johnson contacted Dr. Huettner for advice and offered plaintiff Tramadol (Ultram) for pain relief.   On October 15, 2014, plaintiff returned and reported worsening left hand contractures.   PA Johnson "ordered CBC and comprehensive panel lab draws and 50 mg of Ultram."   (ECF No. 53-2, PageID.572-80; Johnson Aff. ¶¶ 15-17, ECF No. 53-4, PageID.626; Plf. Decl. ¶ 38, ECF No. 60-1, PageID.729).

-13-

On October 16, 2014, PA Johnson submitted a request for manual manipulation palmar fascia surgery for plaintiff's right hand. This request was approved on October 20, 2014. On October 21, 2014, PA Johnson noted that Xiaflex would not be released without approval by a qualified physician and that Dr. Huettner's office would be contacted to resolve the issue. Plaintiff reported an increase in left hand pain and indicated that he wanted to proceed with the amputation of his left ring finger before any treatment for his right hand. On October 24, 2014, PA Johnson requested a hand surgery consultation and it was approved later that day. On October 31, 2014, PA Johnson noted that plaintiff had agreed to proceed with the amputation of his left middle finger. After the surgery, treatment of plaintiff's right hand with Xiaflex injections and manipulation of contractures would begin. (ECF No. 53-2, PageID.581-99; Johnson Aff. ¶¶ 18-21, ECF No. 53-4, PageID.626-27). PA Johnson provided plaintiff with a prescription for "Tylenol 3 with codeine" from October 31, 2014, through November 3, 2014. Plaintiff states that he received over-the-counter pain medications from November 4 to November 12, 2014. (Plf. Decl. ¶¶ 40-43, ECF No. 60-1, PageID.729-30; ECF No. 60-1, PageID.764-65, 770, 786-87; ECF No. 62, PageID.796-800).

On November 10, 2014, PA Johnson submitted a request that plaintiff be scheduled for a post finger amputation follow-up examination with Dr. Huettner in two weeks. The request was approved. On November 12, 2014, Dr. Huettner amputated plaintiff's left hand fourth finger due to chronic pain and lack of function.

On November 13, 2014, plaintiff returned to PA Johnson and reported post-operative pain and indicated that Ultram was not providing sufficient pain relief.    PA Johnson provided plaintiff with "Tylenol #4, Senna, and Acetaminophen-Codeine" prescriptions.    (ECF No. 53-2, PageID.600-12; Johnson Aff. ¶¶ 22-23, ECF No. 53-4, PageID.627; Plf. Decl. ¶ 45, ECF No. 60-1, PageID.730; ECF No. 60-1, PageID.757-58; Huettner Decl. ¶ 10, ECF No. 60-1, PageID.791; ECF No. 62, PageID.794-95).    On November 25, 2014, PA Johnson submitted a request that plaintiff be approved for another post-surgical visit.    This request was denied.    The alternative treatment plan was to follow-up on site with the medical provider.    On December 2, 2014, plaintiff related to PA Johnson that his chronic pain had resolved. (ECF No. 53-2, PageID.613-19; Johnson Aff. ¶¶ 24-25, ECF No. 53-4, PageID.627).

PA Behler, PA Johnson, and Registered Nurse Karp treated plaintiff in a manner that in their medical judgment was appropriate.    (Karp Aff. ¶¶ 2, 6-10, ECF No. 50-1, PageID.427-29; Behler Aff. ¶ 17, ECF No. 53-3, PageID.623; Johnson Aff. ¶ 29, ECF No. 53-4, PageID.628).

On April 7, 2017, plaintiff filed this lawsuit.    (ECF No. 1).

-15-

## Discussion

A. Eighth Amendment

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05.   In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard:   a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).   501 U.S. at 298. "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

-16-

"The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Id.*  Plaintiff claims that the treatment he received was inadequate or unreasonably delayed.  Thus, he was required to "present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment" and " 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.' " *Id.* (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013).  "The plaintiff also must place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment."  *Rhinehart v. Scutt*, 894 F.3d at 738 (citation and quotation omitted).  Plaintiff did not present medical evidence sufficient for a reasonable trier of fact to find in his favor on the objective component of his claim against Registered Nurse Karp based on her failure to contact a physician or a physician's assistant on May 22, 2014, when plaintiff requested it.  Plaintiff likewise failed to present medical evidence sufficient to support his claims based on perceived inadequacies in the medications prescribed by PA Behler and PA Johnson.

Dr. Huettner states that in his medical opinion that occupational therapy was a significant portion of plaintiff's recovery process from the March 11, 2014, surgical procedure.  Plaintiff's recovery from that surgery would have benefitted from the occupational therapy he prescribed.  (Huettner Decl. ¶¶ 7-8, ECF No. 60-1, PageID.791).  "[A]n occupational therapist was needed to supervise and instruct

[plaintiff] as opposed to self-rehabilitation, because a qualified therapist would advise on limitations and appropriately push to obtain maximum results within safe limits for the patient." (*Id.* at ¶ 9, PageID.791). PA Behler was plaintiff's medical care provider during the period after the March 11, 2014, surgery.

Dr. Huettner's declaration does not include an opinion that plaintiff would have benefitted from occupational therapy after the May 20, 2014, surgery. His June 4, 2014, note states, however, that plaintiff "would benefit from occupational therapy." PA Johnson began treating plaintiff in June 2014.

I find that Dr. Huettner's declaration and note is evidence on which a reasonable trier of fact could find in plaintiff's favor on the objective component of Eighth Amendment claims against PA Behler and PA Johnson based on the denial of the occupational therapy that Dr. Huettner prescribed after the March 11 and May 20, 2014, surgeries.

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Id.* at 837. "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart v. Scutt*, 894 F.3d at 738. The judgments of medical professionals are entitled to deference. *Id.*

The subjective component presents "a high bar that a plaintiff must clear to prove an Eighth Amendment medical needs claim:   The doctor must have *consciously* exposed the patient to an *excessive risk* of *serious* harm."   *Id.* at 738-39 (citation and quotation omitted).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.   The prison official's state of mind must evince deliberateness tantamount to intent to punish.   Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.   Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

"An inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.   Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d at 740 (citations and quotations omitted).   "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."   *Id.* at 744.   Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.   *Id.* at 740, 753.

-19-

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against any defendant. Although Dr. Huettner expressed an opinion that plaintiff would have benefitted from occupational therapy, he never asserted that the care provided by PA Behler or PA Johnson fell below professional standards, much less that it rose to the level of criminal recklessness. Plaintiff's claims that defendants "should have" provided him with "different" medical care are, at best, state-law malpractice claims.

B. Qualified Immunity

Registered Nurse Karp is also entitled to summary judgment on plaintiff's claim on the basis of qualified immunity. Plaintiff has not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis on his claim for the reasons previously stated herein.

The second prong of the qualified immunity analysis must be undertaken in light of the specific context of the case, not as a broad general proposition. *See Brosseau v. Haugen*, 543 U.S. at 198; *see also Kisela v. Hughes*, 138 S. Ct. at 1152. It was plaintiff's burden to convince the Court that the law was clearly established on May 22, 2014, when Registered Nurse Karp acted. *See Johnson v. Moseley*, 790 F.3d at 653. Plaintiff has not shouldered, much less carried his burden.[3] (ECF No.

---

[3] Plaintiff cites *Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1998) in support of an argument that defendant has "no need" for a qualified immunity defense. (ECF No. 58, PageID.661). This argument has been "flatly rejected." *Sabin v. Karber*, No.

-20-

58,  PageID.661).    Plaintiff  has  not  identified  any  case  where  a  registered

nurse/health  unit  manager  was  found  to  have  violated  a  prisoner's  Eighth

Amendment  rights  where  the  prisoner  claimed  that  he  needed  stronger  pain

medication  and  the  medical  professional  made  a  determination  that  it  was  not

necessary  to  immediately  contact  a  doctor  or  physician's  assistant  and  the  patient

had  an  appointment  with  a  physician's  assistant  the  next  day.

C.  Supplemental Jurisdiction

As a general rule, in cases in which a federal court dismisses all federal claims,

it will decline to exercise supplemental jurisdiction over a plaintiff's state-law claims.[4]

---

1:14-cv-296, 2017 WL 4160950, at *12 (W.D. Mich. Sept. 20, 2017).    "The Sixth
Circuit's  decision  in  Ahlers  stands  for  the  unremarkable  proposition  that  if  a
defendant is entitled to judgment in h[er] favor on other grounds, a court may elect
as a matter of judicial economy, not to address qualified immunity."    Jones v.
Borgerding, No. 1:14-cv-1265, 2016 WL 5468056, at *8 (citing Ahlers, 188 F.3d at
374).    "It is equally appropriate for a court to address the qualified immunity issue
and determine whether it provides an additional basis for entry of judgment in the
defendant's favor."    Id. (collecting cases).

[4] Sua sponte dismissal of plaintiff's purported state law gross negligence claims for
failure to state a claim upon which relief can be granted is another appropriate option.
See 28 U.S.C. § 1915(e)(2)(B)(ii).    "Under Michigan law, no 'gross negligence' cause
of action exists."    Cramer v. Genesee Cty., No. 18-cv-10115, 2018 WL 2981628, at *5
(E.D. Mich. June 14, 2018); see Jones v. Corr. Med. Servs., 845 F. Supp. 2d 824 846
(W.D. Mich. 2012) ("Michigan law does not, as Plaintiff implies, allow a claim
sounding in medical malpractice to be brought as a 'gross negligence' claim under the
Government Tort Liability Act, MICH. COMP. L[AWS] § 691.1407.").    Negligence
claims against medical care providers are malpractice claims.    See Alexander v.
Fillion, No. 2:16-cv-64, 2017 WL 6887038, at *4 (W.D. Mich. Oct. 18, 2017); Simmons
v. Rogers, No. 1:14-cv-1242, 2017 WL 1179376, at *5 (W.D. Mich. Mar. 30, 2017).
Under Michigan law, "[t]o commence a medical malpractice action, a plaintiff must
file both a complaint and an affidavit of merit" as required by MICH. COMP. LAWS
§ 600.2912d(1).    Young v. Sellers, 657 N.W.2d 555, 557 (Mich. Ct. App. 2002).    Dr.
Huettner's declaration falls short of satisfying the stringent statutory requirements

*See* 28 U.S.C. § 1367(c)(3); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("[A] federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiff's federal claims." (citing 28 U.S.C. § 1367(c)(3))).   A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.   *Smith v. Erie County Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015); *see Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) ("Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right.") (citation and quotation omitted).   I find no reason for a departure from the general rule and recommend that the Court decline to exercise supplemental jurisdiction.

## **Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motions for summary judgment (ECF No. 45, 53) be granted and that judgment be entered in defendants' favor on all plaintiff's federal claims.   I recommend that the Court, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's purported state law claims.

Dated:     August 30, 2018                         /s/ Phillip J. Green
                                                               PHILLIP J. GREEN
                                                               United States Magistrate Judge

---

for an affidavit of merit.   Most notably, it does not include the "health professional's opinion that the applicable standard of practice or care was breached by the health professional . . . receiving the notice."   MICH. COMP. LAWS § 600.2912d(1)(b).

## <u>NOTICE TO PARTIES</u>

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).